# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍ ) | | |
| TERRENCE P. ) | | |
| COLLINGSWORTH, *et al.*, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v.  ) | | Civil Action No. 19-1263 (ABJ) |
| ) | | |
| DRUMMOND COMPANY ) | | |
| INCORPORATED, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |
| ﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍ ) | | |

## <u>MEMORANDUM OPINION</u>

On May 1, 2019, plaintiffs Terrence P. Collingsworth, Ivan Otero Mendoza, and Albert van Bilderbeek filed this lawsuit against twelve named defendants and ten unnamed defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.*, for "their unlawful conduct in conspiring with and aiding and abetting the United Self Defense Forces of Colombia (AUC), the umbrella paramilitary group in Colombia, in committing war crimes, crimes against humanity, torture and extrajudicial killings, among other crimes, in Colombia."  Compl. [Dkt. # 1] ¶ 1.  Plaintiffs also allege that defendants committed various torts when they engaged in a "systematic cover up to hide their crimes, [which] involved bribing and threatening numerous witnesses to [d]efendants' criminal acts," and "falsely accusing [p]laintiffs of bribing witnesses to provide testimony against the [d]efendants."  *Id.*  Plaintiffs state that this has caused them emotional distress as well as harm to their businesses, economic and contractual opportunities, and reputations.  *Id.* ¶¶ 191–208.

Eleven of the named defendants have appeared in this case and have moved to dismiss the complaint for a number of reasons, including lack of personal jurisdiction, improper venue, improper service, and failure to state a claim upon which relief may be granted.  Drummond Defs.' Mot. to Dismiss [Dkt. # 8] ("Drummond Defs.' Mot."); Itochu's Mot. to Dismiss [Dkt. # 9] ("Itochu's Mot."); Individual Defs.' Mot. to Dismiss [Dkt. # 10] ("Individ. Defs.' Mot."). Plaintiffs have opposed the motions.  Pls.' Opp. to Drummond Defs.' Mot. to Dismiss [Dkt. # 13] ("Pls.' Opp. to Drummond Defs.' Mot."); Pls.' Opp. to Itochu's Mot. to Dismiss [Dkt. # 14] ("Pls.' Opp. to Itochu's Mot."); Pls.' Opp. to Individ. Defs.' Mot. [Dkt. # 15].

The Court finds that it does not have personal jurisdiction over the eleven defendants that have moved to dismiss the complaint.  Thus, their motions to dismiss will be granted, and the Court need not address their other arguments.

## BACKGROUND

Plaintiff Terrence P. Collingsworth is a human rights lawyer and the Executive Director of International Rights Advocates.  Compl. ¶ 9.  He resides in Washington, D.C. and has served as lead counsel in various cases against the Drummond entities, which are named as defendants in this action.  *Id.*  Plaintiff Albert van Bilderbeek is a dual Dutch-United States citizen who currently resides in the Netherlands.  *Id.* ¶ 10.  Plaintiff Ivan Otero Mendoza is a lawyer and law professor who currently resides in Colombia.  *Id.* ¶ 11.  They brought this lawsuit against twelve named defendants – (1) Drummond Company, Inc.; (2) Drummond Ltd.; (3) Drummond USA, Inc.; (4) Drummond International, LLC; (5) Itochu Coal Americas, Inc.; (6) the Estate of Gary N. Drummond; (7) Augusto Jimenez; (8) Jose Miguel Linares; (9) Alfredo Araujo Castro; (10) Jaime Bernal Cuellar; (11) James Adkins; (12) James Michael Tracy – and ten unnamed defendants – Does 1–10.  *Id.* ¶¶ 12–22.

Drummond Company, Inc. ("Drummond Co."), is a for-profit corporation that mines and ships coal. Compl. ¶ 12. It is incorporated in Alabama and its principal place of business is located in Birmingham, Alabama. *Id.* Drummond Co. owns and operates a large coal mine, rail line, and port in Colombia, and it wholly owns Drummond Ltd., which manages the day-to-day coal operations there. *Id.* ¶ 13. Drummond Ltd. is incorporated and has its principal place of business in Jasper, Alabama. *Id.* In June 2011, defendant Itochu Coal Americas ("Itochu") purchased a 20% interest in Drummond Ltd.'s Colombia operations. *Id.* Itochu and Drummond Ltd. created Drummond International, LLC ("Drummond Int'l"), which plaintiffs allege is a shell corporation that holds Drummond and Itochu's 80% and 20% shares, respectively, in Drummond Ltd. *Id.*

Each of the individual defendants were or still are officers and leaders within the various Drummond entities. Gary N. Drummond was the Chief Executive Officer of Drummond Co. Compl. ¶ 15. He died in July of 2016, and his estate is named as a party in this lawsuit. *Id.* Defendant Augusto Jimenez is a resident of Wellington, Florida and was the president of Drummond Ltd. *Id.* ¶ 16. Defendant Jose Miguel Linares is a Colombian national residing in Bogota who was Drummond Ltd.'s in-house counsel and Jimenez's "right-hand man." *Id.* ¶ 17. He became president of Drummond Ltd. when Jimenez retired. *Id.* Defendant Alfredo Araujo Castro is a Colombian national residing in Valledupar, and he is a Vice President at Drummond Ltd. *Id.* ¶ 18. Defendant James Adkins is a U.S. citizen who resides in West Virginia. *Id.* ¶ 19. He was the Director of Security for Drummond's operations in Colombia. *Id.* Defendant James Michael Tracy is a U.S. citizen who resides in Alabama, and he was an executive at Drummond Co. *Id.* ¶ 20. Defendant James Bernal Cuellar is a Colombian national residing in Bogota, and he is Drummond's lead lawyer in Colombia. *Id.* ¶ 21.

Finally, defendants Does 1–10 "are persons currently unknown" who plaintiffs allege assisted the Drummond entities in their unlawful actions. *Id.* ¶ 22.

Drummond Ltd. operates a coal mine in La Loma, Cesar Province, Colombia. *Id.* ¶ 23. It ships its coal from a port, called Puerto Drummond, which is located in Santa Marta, Magdalena Province, Colombia. *Id.* By the time Drummond started production in 1995, the mine and port areas were under the control of the main leftist guerilla group in Colombia, the Revolutionary Armed Forces of Colombia ("FARC"). *Id.* FARC sought to overthrow the Colombian government through the seizure of large private lands and privately-owned natural resources. *Id.* They then redistributed those lands and resources to the Colombian people. *Id.*

The United Self-Defense Forces of Colombia ("AUC") established a presence in the provinces of Cesar and Magdalena for the purposes of attacking and defeating FARC. Compl. ¶ 24. In 1997, these two provinces "became embroiled in the civil conflict." *Id.* Drummond Ltd. "formally took a side in the civil conflict and joined with the AUC to defeat the FARC." *Id.* ¶ 26. Plaintiffs allege that this entailed providing financing to expand AUC's base, distributing funds to purchase arms and other supplies, and supplying AUC's day-to-day operating expenses. *Id.* Plaintiffs contend that Drummond Ltd. conditioned its financial support on requiring AUC to focus on defeating the FARC "and eliminating its supporters and sympathizers from the area of Drummond's railroad line going through Cesar and Magdalena Provinces." *Id.* ¶ 27. "As a result of Drummond's direct intervention in the civil conflict in these areas," plaintiffs allege, "hundreds of people living in and around Drummond's railroad corridor . . . were executed." *Id.* ¶ 29. Plaintiffs' complaint details the specific war crimes that Drummond Ltd. committed with AUC to benefit its business interests in Colombia. *Id.* ¶¶ 55–70, 128–52. Plaintiffs also make a number of allegations detailing the involvement of the individual defendants in Drummond's alleged

human rights violations, their connections with the AUC, and their personal and specific knowledge of AUC and Drummond's war crimes. *Id.* ¶¶ 51–54.

In 2006, to bring an end to the conflict, AUC demobilized and the two sides engaged in a "Justice and Peace" ("J&P") process, in which former AUC commanders testified to "their war crimes and other criminal acts in order to receive reduced sentences." *See* Compl. ¶¶ 30, 31. Plaintiffs allege that the Drummond defendants bribed and threatened witnesses and their families during the J&P process to cover up their unlawful actions. *See, e.g.*, *id.* ¶¶ 31, 33, 82, 85–88, 124–26. Plaintiffs also contend that Drummond hired former military personnel involved in the conflict to "intimidate and threaten with violence any person who attempted to expose Drummond's role in funding war crimes for the purpose of protecting the company's bottom line." *Id.* ¶ 74.

Plaintiff Collingsworth and the Drummond defendants have a long history of litigation against each other. Plaintiffs have brought a number of cases against the Drummond entities on behalf of victims of the human rights violations and war crimes that were committed during this time. Compl. ¶¶ 3, 153. These cases center around the allegation that Drummond provided knowing and substantial support to a terrorist organization.[1] *Id.* ¶ 37. The first four cases alleged violations of the Alien Tort Statute ("ATS") and the Torture Victim Protection Act ("TVPA"), as well as wrongful death and other tort claims under Alabama and Colombia law. *Romero v. Drummond Company, Inc.*, 552 F.3d 1303, 1309 (11th Cir. 2008). The cases were consolidated and tried in 2007 to a jury in the Northern District of Alabama. *Id.* The jury unanimously rejected the claims and the verdict was affirmed by the Eleventh Circuit. *Id.* at 1324. Plaintiffs allege that

---

1      AUC was designated a terrorist organization by the U.S. Department of State on September 10, 2001. Compl. ¶ 46, citing 66 Fed. Reg. 175, 47054 (Sept. 10, 2001).

during the pendency of that litigation, the Drummond defendants "lied about their roles in providing knowing and substantial assistance to the AUC." Compl. ¶ 154.

Collingsworth filed two additional lawsuits with new plaintiffs against the Drummond entities again alleging violations of the ATS and TVPA. *Baloco v. Drummond Company, Inc.*, 767 F.3d 1229 (11th Cir. 2014), *cert. denied* 136 S. Ct. 410 (2015) ("*Baloco*"); *Doe v. Drummond Company, Inc.*, 782 F.3d 576 (11th Cir. 2015), *cert. denied* 136 S. Ct. 1168 (2016) ("*Balcero*"). These cases were dismissed by the Northern District of Alabama and those judgments were affirmed by the Eleventh Circuit.

In 2011, Drummond Co. filed a lawsuit against plaintiff Collingsworth in the Northern District of Alabama for defamation "after Collingsworth wrote letters to two of Drummond's customers, the government of Netherlands and Defendant Itochu." Compl. ¶ 156; *see Drummond Co., Inc. v. Collingsworth, et al.*, No. 2:11-cv-3695 (N.D. Ala. 2011). The letters stated that Drummond was involved in financing and collaborating with AUC in perpetrating war crimes. Compl. ¶ 156.

Drummond's defamation lawsuit against Collingsworth is still ongoing. In the course of that litigation, evidence came to light that Collingsworth had made payments to certain witnesses in the *Balcero* litigation. Compl. ¶ 159. During discovery, Drummond attempted to uncover the extent of the payments, but it was denied much discovery pursuant to the attorney-client privilege. Mem. Op. & Order, *Drummond v. Collingsworth*, 2:11-cv-3695 (N.D. Ala. Dec. 7, 2015), Ex. 1 to Drummond Defs.' Mot. [Dkt. # 8-1] ("Ala. Mem. Op.") at 2–3. Drummond presented the Alabama district court with evidence that Collingsworth and the law firm he had been associated with, Conrad & Scherer LLP ("C&S"), had made payments to prisoners in Colombia who had agreed to testify on their behalf. *Id.* at 8–26. In 2015, the court in Alabama held a three-day evidentiary

6

hearing on the issue, and it eventually found that the crime-fraud exception to the attorney-client privilege applied to Collingsworth and C&S after Drummond had presented unrebutted evidence of witness bribery, suborning perjury, and fraud on the court. *Id*. at 8–45. The court there also found that Collingsworth had made a number of false representations either to the court or to Drummond regarding these payments. *Id.*

A Special Master is currently reviewing thousands of documents that were withheld by Collingsworth pursuant to the attorney-client privilege to determine whether they should be produced to Drummond pursuant to the crime-fraud exception. Drummond Defs.' Mot. at 4. In the complaint in this case, plaintiffs set forth a number of allegations addressing the reasons why those payments were made to witnesses. Compl. ¶¶ 90–112.

In 2015, after this evidence came to light, Drummond Co. filed another case against Collingsworth, Otero and van Bilderbeek, alleging RICO violations. *Drummond Co., Inc. v. Collingsworth*, No. 2:15-cv-506-RDP (N.D. Ala. 2015), Ex. 4 to Compl. [Dkt. # 8-4]. Drummond Co. contends that Otero served as an intermediary for the payments to witnesses and that van Bilderbeek paid at least $120,000 to a key witness in the *Balcero* case. Ala. Mem. Op. at 29.

Finally, the seventh lawsuit that Collingsworth brought against Drummond, again for violations of the ATS and TVPA, was partly dismissed on May 22, 2019. *Melo v. Drummond Company, Inc*., et al., 2:13-cv-00393-RDP (N.D. Ala.) ("*Melo*"); *see* Compl. ¶ 153. The court's order partly granting the motion to dismiss directed plaintiffs to file a third amended complaint, and defendants answered that complaint on June 17, 2019. Order [Dkt. # 93], *Melo v. Drummond Company, Inc*., et al., 2:13-cv-00393-RDP (N.D. Ala. May 22, 2019). Defendants represent that the case has been stayed pending discovery in Drummond's RICO and defamation cases. Drummond Defs.' Mot. at 2 n.3.

In this case, in addition to making numerous allegations detailing defendants' war crimes, plaintiffs also allege that the Drummond defendants have engaged in a campaign to destroy Collingsworth's reputation in retaliation for the lawsuits that he has filed against them.  According to plaintiffs, that campaign included Drummond's defamation and RICO lawsuits, which plaintiffs contend were filed for the purpose of tarnishing Collingsworth's reputation and hindering his business opportunities.  Compl. ¶ 157, 160.  Plaintiffs contend that the accusations involving bribery witness and suborning false testimony were also part of the defendants' tortious conduct. *Id*. ¶¶ 159, 161.  Furthermore, the Drummond defendants, plaintiffs state, published false statements about them in two widely read and circulated newspapers in Colombia – *Semana* and *El Tiempo*, *id.* ¶¶ 163–64 – and they have posted press releases and letters on their website detailing Collingsworth's actions.  *Id*. ¶ 165.

On May 1, plaintiffs filed a complaint consisting of six causes of action:

- <u>Claim 1</u>:   Violations of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), Compl. ¶¶ 168–87;

- <u>Claim 2</u>:   Conspiracy to violate RICO, 18 U.S.C. § 1962(d), Compl. ¶¶ 188–90;

- <u>Claim 3</u>:   Defamation, Compl. ¶¶ 191–96.  Plaintiffs allege that Drummond published false and defamatory statements about plaintiffs, accusing them of bribing witnesses to give false testimony.  *Id.* ¶ 192.

- <u>Claim 4</u>:   Intentional Interference with Prospective Economic Advantage, Compl. ¶¶ 197–200;

- <u>Claim 5</u>:   Intentional Interference with Contractual Relationships, Compl. ¶¶ 201–04 (this claim is only brought by Collingsworth against all defendants);

- <u>Claim 6</u>:  Intentional Infliction of Emotional Distress, Compl. ¶¶ 205–08.

On August 2, 2019, defendants filed three motions to dismiss. The first was filed by defendants Drummond Ltd., Drummond Co., Drummond Int'l, and Drummond USA, Inc. (collectively, the "Drummond defendants").  *See* Drummond Defs.' Mot.  Itochu Coal Americas filed a separate motion to dismiss.  Itochu's Mot.  Finally, six out of the seven individual defendants – Afredo Araujo Castro, Jaime Bernal Cuellar, Estate of Gary N. Drummond, Augusto Jimenez, Jose Miguel Linares, and James Michael Tracy – filed a separate motion to dismiss.[2] Individual Defs.' Mot.

## STANDARD OF REVIEW

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  In order to survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum.  *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  Plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).  A plaintiff still must carry its burden of demonstrating that a court can exercise personal jurisdiction over a defendant "[e]ven if the defendant would suffer . . . no

---

2       The seventh defendant, Adkins, has not yet been served.  The Court discusses Adkins in Section II, *infra*.

inconvenience." *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017) (alteration in original) (citation omitted).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]" *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [plaintiff] may rest [its] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [it] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Any factual discrepancies should be resolved in favor of the plaintiff. *Crane*, 894 F.2d at 455–56. But, the Court need not treat all of the plaintiff's jurisdictional allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). "Instead, the court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *In re Papst Licensing*, 590 F. Supp. 2d at 98 (internal quotation marks and citation omitted).

## ANALYSIS

### I.    Personal Jurisdiction

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *see Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016), cert. denied, 137 S. Ct. 375 (2016); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987) ("A federal court normally looks . . . to the long-arm statute of the State in which it sits to determine whether" exercise of personal jurisdiction is warranted).

The District of Columbia's long arm statute provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –

> (1) transacting any business in the District of Columbia;

> (2) contracting to supply services in the District of Columbia;

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

> (5) having an interest in, using, or possessing real property in the District of Columbia;

> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

> (7) marital or parent and child relationship in the District of Columbia[.]

D.C. Code § 13–423(a).

Even when the long-arm statute has been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the due process clause. The due process clause of the Constitution requires that before a defendant outside the forum state may be subject to suit, it must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted); *GTE New Media*, 199 F.3d at 1347. Under the "minimum contracts" standard, courts must insure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980).  A defendant's contacts must be "with the forum State itself, not . . . with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277 (2014).

Courts may exercise either general or specific jurisdiction.  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction requires an "affiliation between the forum and the underlying controversy."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017) (internal quotation marks and citation omitted).  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations omitted).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Id*. at 924.  Specific jurisdiction over a non-resident defendant is appropriate where "there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* (alteration in original), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In order to meet the test for specific jurisdiction, "the plaintiff must allege some specific facts evidencing purposeful activity by the defendants in the District of Columbia by which they invoked the benefits and protections of the laws of the District of Columbia."  *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 44 (D.D.C. 2018).  "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear*,

564 U.S. at 919 (internal quotation marks and citation omitted).  In other words, specific jurisdiction is tied to each defendant and to each claim.  *See Walden*, 571 U.S. at 293.

Plaintiffs allege that this Court can exercise personal jurisdiction over defendants because "[d]efendants intended the effects of their threats and other retaliation to be felt in Washington, D.C. by [p]laintiff Collingsworth, who Drummond knows resides and practices law in Washington, D.C."[3]  Compl. ¶ 8.  Plaintiffs allege that personal jurisdiction extends to the other defendants, because they "conspired to injure [p]laintiff Collingsworth, along with the other [p]laintiffs," and they all "knew that [p]laintiff Collingsworth would suffer injuries in Washington, D.C."  *Id.*  All defendants argue that plaintiffs have not alleged sufficient facts to justify the Court's exercise of specific personal jurisdiction over them, and so the action must be dismissed.[4]  Drummond Defs.' Mot. at 4–7; Itochu's Mot. at 6–8; Individual Defs.' Mot. at 1.

## A.  The Drummond Defendants

While plaintiffs emphasize the harm allegedly suffered by Collingsworth, the D.C. resident, at the hands of the defendants, they state that they are relying on section 13–423(a)(1) of the District of Columbia's long-arm statute to establish personal jurisdiction.[5]  Pls.' Opp. to

---

3      Only plaintiff Collingsworth lives in Washington, D.C.  The other two plaintiffs, Otero and van Bilderbeek, live in Colombia and the Netherlands, respectively.

4      The Court notes that plaintiffs also contend that personal jurisdiction is proper under the RICO statute, 18 U.S.C. § 1965(d).  Compl. ¶ 8.  The D.C. Circuit has held that this section does not provide for nationwide personal jurisdiction over every defendant in a civil RICO case.  "In other words, a civil RICO action can only be brought *in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant*."  *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099–100 (D.C. Cir. 2008) (emphasis in original), quoting *PT United Can Co. Ltd v. Crown Cork & Seal Co.*, 138 F.3d 65, 70 (2d Cir. 1998).  Thus, the mere invocation of the statute does not confer personal jurisdiction, and the Court must still analyze the issue under the D.C. long arm statute and the Constitution.

5      Plaintiffs have not relied on any other provision of the long-arm statute and have not responded to defendants' arguments that the other provisions are inapplicable.  Thus, the Court will not analyze whether other provisions of the statute apply.

Drummond Defs.' Mot. at 7–8.  That provision states that a court in D.C. may exercise personal jurisdiction over a person to hear a claim arising from that person's "transacting any business in the District of Columbia."  D.C. Code § 13–423(a)(1).[6]  This section of the long-arm statute has been deemed to be "coextensive with the Constitution's due process requirements," and therefore, the two elements of the personal jurisdiction analysis "merge into a single inquiry."  *GTE New Media*, 199 F.3d at 1347.

Plaintiffs do not argue that defendants transacted business in the District or that the claim arose from any business defendants transacted in the District.[7]  Their primary allegation in support of personal jurisdiction is that that plaintiff Collingsworth lives and practices law within the

---

6       By contrast, it is sections (a)(3) and (a)(4) that predicate jurisdiction on causing tortious injury within the District.  Section (a)(3), though, requires that the injury be caused by an act or omission *in* the District of Columbia, and if the injury was caused by an act or omission outside the District, section (a)(4) requires that the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  None of this has been shown or even argued here.

7       The Court notes that in plaintiffs' complaint, they allege that "the Drummond [d]efendants have various agents operating in this District and they conduct business in this District."  Compl. ¶ 7.  But, they do not allege any other facts or details to support that statement.  Such a conclusory allegation is insufficient to establish personal jurisdiction.  *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 88 (D.D.C. 2012); *see also Robinson v. Ashcroft*, 357 F. Supp. 2d 146, 148 (D.D.C. 2004).  Indeed, the CEO of Drummond Co., James Michael Tracy, averred that each Drummond defendant "has no office in the District of Columbia, no employees in the District of Columbia, and no customers in the District of Columbia."  Decl. of James Michael Tracy, Ex. 5 to Drummond's Mot. [Dkt. # 8-5] ("Tracy Decl.") ¶¶ 6–9; *see United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (instructing that in assessing challenges to personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true, and instead "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.") (internal quotation marks and citation omitted).  There are no other allegations that the Drummond defendants conduct any business in the District of Columbia, or that the claim arose from business transacted in the District of Columbia.  Indeed, plaintiffs do not argue that the Drummond defendants conduct any business in the District in their opposition to defendants' arguments regarding personal jurisdiction, relying only on Collingsworth's connection to D.C.

District, and that Drummond has injured Collingsworth knowing that the injury would be felt in the District.[8]  Compl. ¶ 8.  That injury takes the form of interference with business opportunities, financial injury, reputational harm, and emotional distress.  *Id*. ¶¶ 203–04.

The fact that plaintiff Collingsworth suffered the effects of the alleged injury within the District is insufficient by itself to confer personal jurisdiction over defendants.  *See Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (section 13-423(a)(1) of the D.C. long-arm statute "focuses on where the defendant undertook the challenged . . . actions, not where the plaintiff felt the injury").   Plaintiffs make no effort whatsoever to satisfy the plain terms of the only statutory provision upon which they rely: there has been no showing that the complaint arises out of the Drummond defendants' "transacting any business in the District."  D.C. Code § 13–423(a)(1).

Plaintiffs cite *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) and *Calder v. Jones*, 465 U.S. 783 (1984), but they misapprehend the nature of the inquiry.  It is true that those cases are key Supreme Court precedent concerning the constitutional aspect of personal jurisdiction, but it is black letter law in this Circuit that "[a] court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media*, 199 F.3d at 1347.  So even if *Burger King* was helpful, it would do nothing to solve plaintiffs' problem.

And *Burger King* is not helpful in any event.  According to plaintiffs, *Burger King* stands for the proposition that the Court has jurisdiction over a defendant when that "defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King*, 471 U.S. at 472–73

---

8      Plaintiffs do not argue that the Court has general jurisdiction over the Drummond defendants.

(some internal quotation marks and citations omitted); *see* Pls.' Opp. to Drummond Defs.' Mot. at 9–10; *see also Burger King*, 471 U.S. at 473–74 (a state has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors;" and "where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities") (internal quotation marks and citations omitted).  Plaintiffs argue that the Drummond defendants' actions were directed to Collingsworth, a D.C. resident, and the injuries arise out of that conduct.

What plaintiffs fail to mention is that in *Burger King*, the Supreme Court went on to state that "[n]otwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Id.* at 474.  The Court emphasized that even the foreseeability of causing injury in another State is not sufficient to establish the necessary contacts there, and that jurisdiction is only proper when "the defendant *himself* [ ] create[s] a 'substantial connection' with the forum State."  *Id.* at 474–75 (emphasis in original), quoting *McGee v. Int'l Life Ins*. Co., 355 U.S. 220, 223 (1957).

Plaintiffs also rely on the Supreme Court's decision to uphold personal jurisdiction in *Calder v. Jones*. In that case, a California actress brought a libel action in California state court against a reporter and an editor based in Florida, claiming that their work, which was published in California, caused damage to her reputation there.  465 U.S. at 785–86.  Plaintiffs submit that they too felt the effects of defendants' actions and bore the brunt of the injury within their home forum, and so, they maintain, this Court has personal jurisdiction over the Drummond defendants.  Pls.' Opp. to Drummond Defs.' Mot. at 9–10.

But in *Calder*, defendant's conduct connected it to the forum, not just to the plaintiff and her injuries. The Court noted that defendants relied on California sources for the information in the article, the story was about plaintiff's activities in California, and the article was widely circulated to California residents.  465 U.S. at 785–86, 789–90.

The Supreme Court underscored this point in *Walden v. Fiore*, 571 U.S. 277 (2014):

> *Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Id.* at 290; *see also id.* at 284 (the relevant inquiry is "the relationship among the defendant, the forum, and the litigation").  Thus, the constitutional analysis, like the long-arm analysis, turns on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and the "plaintiff cannot be the only link between the defendant and the forum." *Id*. at 285.  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.*

Nonetheless, plaintiffs maintain that the following actions taken by the Drummond defendants can be considered sufficient minimum contacts with the forum:   making false statements about plaintiff Collingsworth on Drummond's website, Compl. ¶¶ 165, 193; making false statements about Collingsworth that have been published in Colombian newspapers, *id.* ¶¶ 163–64; making false statements about all plaintiffs to "various criminal investigators in Colombia and the U.S.," *id.* ¶¶ 166; making "false statements to the press and to others, including those with professional ties to [p]laintiffs," *id.* ¶ 9; filing a "frivolous SLAPP" defamation lawsuit against Collingsworth in the Northern District of Alabama, *id.*; falsely accusing Collingsworth of

bribing witnesses and false testimony during that lawsuit, *id.* ¶ 91; and filing a "false and frivolous RICO case against [p]laintiffs." Pls.' Opp. to Drummond's Defs.' Mot. at 12, citing Compl. ¶ 160.

None of these actions demonstrate a relationship between defendant, the forum, and the litigation. Plaintiffs do not identify any defamatory statement that the Drummond defendants circulated or directed to District of Columbia residents or published within the forum; the complaint talks about newspapers in Colombia and does not allege that those publications are circulated here. The alleged false accusations in litigation were made in Court documents in Alabama. And there is no allegation that the allegedly false statements made to investigators in Colombia and the United States or communicated to those with professional ties to plaintiffs ever reached any individual within the District of Columbia.

Plaintiffs allege that false and defamatory statements were published on Drummond's websites. Compl. ¶ 193. But, plaintiffs have made no factual showing that D.C. residents interacted with those websites. And given the ubiquity of the internet, the D.C. Circuit has held that "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." *GTE New Media*, 199 F.3d at 1349. In line with that authority, courts in this district have consistently held that the maintenance of a website that is accessible by District of Columbia residents is insufficient to establish the minimum contacts necessary to establish personal jurisdiction over an out-of-state defendant because it "is not purposeful availment; rather, it is merely an unavoidable side-effect of modern internet technology." *Betz v. Aidnest*, No. 1:18-CV-0292 (KBJ), 2018 WL 5307375, at *7 (D.D.C. Oct. 26, 2018), quoting *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005); *see, e.g.*, *Hayes v. FM Broadcast Station WETT (FM)*, 930 F. Supp. 2d 145, 151–52 (D.D.C. 2013) (finding that the fact that D.C. residents had access to

defendants' website was insufficient to show that defendants purposefully availed themselves of the District of Columbia); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 133 (D.D.C. 2009) ("Sinclair's anticipated response that defendants' [allegedly defamatory] statements posted on the Internet can be downloaded and viewed in the District of Columbia is insufficient to establish personal jurisdiction, even if Sinclair were located here rather than in Minnesota."). Thus, the fact that D.C. residents may have been able to read the defamatory statements on Drummond's website is not enough to establish personal jurisdiction.

For all of these reasons, the exercise of personal jurisdiction over the Drummond defendants would be improper under both the D.C. long-arm statute and the Constitution.[9]

Similar considerations defeat jurisdiction over the other defendants.

### B. Itochu

In 2011, Itochu Coal Americas, Inc. invested in Drummond's Colombian mining operations by purchasing a 20% position in Drummond Ltd., which operates Drummond's Colombian mines. Compl. ¶ 13. Drummond Int'l was created to hold the companies' respective 80% and 20% shares in Drummond, Ltd. *Id.* On September 19, 2011, Collingsworth sent Itochu a letter outlining two lawsuits that he had brought against the Drummond entities. *See id.* ¶ 156; Letter from Terrence P. Collingsworth to Masahiro Okafuji, President & CEO Itochu Corp. (Sept. 19, 2011), Ex. 52A to Compl. [Dkt. # 1-55] ("Itochu Letter"). The letter details alleged human

---

9       Plaintiffs argue that this Court should exercise jurisdiction over their case against the defendants because the Northern District of Alabama exercised personal jurisdiction over them, plaintiff Otero in particular, in the RICO case in which they are the defendants. Pls.' Opp. to Drummond Defs.' Mot. at 14. But the court in that case emphasized the importance of the forum being the "focal point" of the conduct causing the injury, and it found that Otero had sufficient contacts with the forum because he submitted two sworn allegedly fraudulent declarations to the Northern District of Alabama. Mem. Op. [Dkt. # 91], *Drummond Company Inc. v. Collingsworth*, No. 2:15-cv-00506-RDP (N.D. Ala. Aug. 12, 2016), Ex. B. to Pls.' Opp. to Drummond Defs.' Mot. [Dkt. # 13-3] at 10. Here, in contrast, plaintiffs have not alleged that defendants have made any false statements in the District of Columbia.

rights violations committed by Drummond between 1999 and 2006. *See* Itochu Letter. Plaintiffs allege that this letter put Itochu on notice of Drummond's alleged wrongdoing, and therefore, Itochu "joined the criminal enterprise" that year. Compl. ¶ 156. Itochu argues that the Court does not have either general or specific personal jurisdiction over it. Itochu's Mem. in Supp. of its Mot. to Dismiss [Dkt. # 9-1] ("Itochu's Mem.").

The Court agrees that it does not have general personal jurisdiction over Itochu. While the complaint does not contain allegations concerning the location of Itochu's headquarters or principal place of business, Itochu represents that it is incorporated in Delaware and its principal place of business is in Alabama. Itochu's Mem. at 6–7. Since plaintiff has not presented any contrary information to establish that the corporation is located in the District of Columbia, the Court cannot exercise general jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotation marks omitted) (edits in original).

Plaintiffs also cannot establish specific personal jurisdiction. The complaint is completely devoid of any allegations concerning a relationship between Itochu, the District of Columbia, and this litigation. Indeed, the only mentions of Itochu in the 213-paragraph complaint state that when Itochu purchased a share in Drummond Ltd., it therefore "provid[ed] substantial support for Drummond's criminal enterprise . . ., aided and abetted Drummond's wrongful acts, and . . . it joined an ongoing conspiracy to commit unlawful acts in Colombia." Compl. ¶ 14. When it received Collingsworth's letter, and then did not act, plaintiffs allege that Itochu "joined the criminal enterprise." *Id.* ¶ 156. This is insufficient to establish minimum contacts with the forum, let alone enough to meet the standards under D.C.'s long-arm statute. *See Kopff v. Battaglia*, 425

F. Supp. 2d 76, 82 (D.D.C. 2006) (finding that the District of Columbia long-arm statute extends as far as the minimum contacts required under the Due Process Clause and, in some instances, is more stringent than the constitutional requirement).

Plaintiffs argue that jurisdiction over Itochu is established through the Court's personal jurisdiction over Drummond, because "Itochu joined the conspiracy to cause significant damage to [p]laintiff Collingsworth in the District of Columbia."  Pls.' Opp. to Itochu's Mot. at 7.  They argue that section 13-423(a)(1) of the D.C. code authorizes personal jurisdiction over those that conduct business in the District through a co-conspirator.  *Id.*, citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001).  But this logic fails at the start given the complete absence of evidence enabling this court to hear the claims against Drummond.

"Conspiracy jurisdiction" under section 13-423(a)(1) assumes that "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'; co-conspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" *Second Amendment Found.*, 274 F.3d at 523, quoting D.C. Code § 13–423(a)(1).  "In order to attribute the acts of one co-conspirator to another for jurisdictional purposes, plaintiffs must adequately allege '(1) the existence of a civil conspiracy . . . (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy.'" *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 41 (D.D.C. 2007) (some internal quotation marks omitted), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008), quoting *Kopff*, 425 F. Supp. 2d at 81–82 n.4.

In order to meet this standard, "plaintiffs must first allege that at least one alleged co-conspirator of the defendant committed at least one act in furtherance of the conspiracy within the District of Columbia that was sufficient to subject the alleged co-conspirator to jurisdiction under

the D.C. long-arm statute." *IFX Markets, Ltd.*, 479 F. Supp. 2d at 42.  "Only if this Court could

have exercised long-arm jurisdiction over that co-conspirator . . . , will it be able to reach

[defendant] through the alleged conspiracy." *Id.*   Since plaintiffs do not allege that Drummond

committed any acts within the District of Columbia, and the Court has found that the Drummond

defendants do not have sufficient contacts with the District to establish personal jurisdiction over

them, plaintiffs lack the necessary foundation for the claimed basis for personal jurisdiction over

Itochu.

### C.  The Individual Defendants

Plaintiffs have sued seven individuals:

1. Garry Drummond, whose estate was named in his stead, was the former CEO of Drummond Co., Inc. and a resident of Birmingham, Alabama, Compl. ¶ 15;

2. James Michael Tracy, who is a current resident of Birmingham, Alabama and the current CEO of Drummond Co., Inc., Compl. ¶ 20;

3. Augusto Jimenez, who is a resident of Wellington, Florida and is the former president of Drummond, Ltd., Compl. ¶ 16;

4. Jose Miguel Linares, who resides in Bogota, Colombia and is the current President of Drummond, Ltd, and its former General Counsel, Compl. ¶ 17;

5. Jaime Bernal Cuellar, who is a lawyer and law professor who resides in Bogota, Colombia and once served as the Attorney General of Colombia, Compl. ¶ 21;

6. Alfredo Araujo Castro, who resides in Valledupar, Colombia and is the Director of Community Relations for the Colombian branch of Drummond, Ltd., Compl. ¶ 18; and

7. James Adkins, who is a current resident of West Virginia and was the Director of Security for Drummond's operations in Colombia.  Compl. ¶ 19.

The first six of these defendants (the "individual defendants") have moved to dismiss on the grounds that the Court lacks personal jurisdiction over them, venue is improper, the complaint fails to state a claim, and that four of them were not served properly.  Individ. Defs.' Mot.  With respect to personal jurisdiction and venue, they incorporated the arguments made by the Drummond defendants.  *Id.* at 1–2.

Plaintiffs again seek to predicate the requested exercise of personal jurisdiction on section (a)(1) of the D.C. long-arm statute and their claims that they suffered reputational, economic, and emotional injuries and damages at the hands of the individual defendants within the District of Columbia.  Compl. ¶¶ 7, 8; *see* Pls.' Opp. to Individ. Defs.' Mot. at 3 (incorporating plaintiffs' arguments from their opposition the Drummond defendants' motion to dismiss).  They also repeat the alleged conspiracy theory.  Compl. ¶ 8; Pls.' Opp. to Individ. Defs.' Mot. at 3 n.2.

But this is insufficient to satisfy the long-arm statute – once again, plaintiffs don't even try to bring the defendants within its terms.

Moreover, the showing is insufficient to satisfy the constitutional standard based on all of the authorities set forth above.  Plaintiffs' complaint and opposition are completely devoid of facts linking the individual defendants to the District of Columbia and the claims.  Five of the individual defendants (all but the Estate) submitted declarations stating that they have never maintained offices, owned property, or paid income or property taxes in the District of Columbia.  They aver that they have not had any communications with any person in the District of Columbia relating to the plaintiffs, other than with attorneys who are involved in the litigation in Alabama.  And they aver that they have only visited the District a handful of times.  Tracy Decl. ¶¶ 3–5; Decl. of Augusto Jimenez Mejia, Ex. 2 to Individ. Defs.' Mot. [Dkt. # 10-2] ("Mejia Decl.") ¶¶ 4–7; Decl. of Jose Miguel Linares, Ex. 3 to Individ. Defs.' Mot. [Dkt. # 10-3] ("Linares Decl.") ¶¶ 2, 4–8;

Decl. of Alfredo Araujo Castro, Ex. 4 to Individ. Defs.' Mot. [Dkt. # 10-4] ("Castro Decl.") ¶¶ 3–9; Decl. of Jaime Bernal Cuellar, Ex. 5 to Individ. Defs.' Mot. [Dkt. # 10-5] ("Cuellar Decl.") ¶¶ 8–12.

There are no allegations that any of the individual defendants took any actions against the plaintiffs within the District of Columbia that would make it reasonable for them to anticipate being haled into its courts.  Furthermore, none of the individual defendants are domiciled within the District, so there is no basis to exercise general jurisdiction over them.  *Daimler*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

Finally, as was the case with Itochu, plaintiffs cannot support the exercise of conspiracy jurisdiction because the Court does not have personal jurisdiction over the alleged co-conspirators either.

For those reasons, the Court finds that it does not have personal jurisdiction over the individual defendants, and the Court will grant their motion to dismiss.

### D.  Jurisdictional Discovery

Plaintiffs seek to forestall the dismissal of the case with a request that they be allowed to conduct jurisdictional discovery "to identify additional facts that would be used to amend the complaint."  Pls.' Opp. to Drummond Defs.' Mot. at 16.  Defendants oppose the request, and notwithstanding the standard that ordinarily applies when parties seek such discovery, the Court in its discretion will decline to permit what is an obvious fishing expedition here.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal," and such discovery is permissible even when plaintiffs have "not made out a prima facie case of jurisdiction."  *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003); *see also FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (noting

district courts' "broad discretion" to order jurisdictional discovery).  However, "[i]n order to engage in jurisdictional discovery, the plaintiff 'must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.'  Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation." *IFX Mkts.*, 529 F.3d at 1093–94, quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see also Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11–12 (D.D.C. 2009) (citations omitted) ("Jurisdictional discovery . . . is justified only if the plaintiff reasonably demonstrates that it can supplement its jurisdictional allegations through discovery.") (internal quotation marks omitted).

Here, plaintiffs seek discovery

> as to the Drummond Defendants' intent to cause harm to Plaintiffs, including communications of any strategy to do so, their knowledge of harm caused to the Plaintiffs within the District of Columbia, and Drummond's overall strategy to target Plaintiffs with a "smear campaign" or a "public campaign" to damage their business interests and their reputations where they reside and conduct their businesses, including in the District of Columbia.

Pls.' Opp. to Drummond's Mot. at 16.  In other words, plaintiffs want to uncover facts to support their entirely unsupported legal theory.  Since, as explained above, personal jurisdiction is established by examining the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," *Walden*, 571 U.S. at 285, the discovery plaintiffs propose to undertake would not bring any relevant facts to light, and there is no reason to permit it to go forward.  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (finding that the district court did not abuse its discretion in denying jurisdictional discovery because "the additional discovery requested . . . would not change [the] analysis"); *see also Williams v. Romarm*, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (affirming the district court's denial of jurisdictional discovery

where the questions plaintiffs sought answers to "lack[ed] specificity to the District"); *NBC–USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 60–61 (D.D.C. 2010) (denying jurisdictional discovery where plaintiff failed to identify any particular area of discovery that, if allowed, could produce information sufficient to establish personal jurisdiction).

Thus, the Court will deny plaintiffs' request for jurisdictional discovery.

## II.   The Remaining Defendants

The remaining defendants are James Adkins and the ten Doe defendants.  Plaintiffs assert that Adkins resides in West Virginia, and that he was the Director of Security for Drummond's operations in Colombia.[10]  Compl. ¶ 19.  Plaintiffs allege that ten unnamed defendants "assisted the Drummond [d]efendants in their bribery and threats to potential witnesses of Drummond's criminal acts and/or assisted in covering up Drummond's criminal acts." Compl. ¶ 22.  Plaintiffs go on to state that these defendants can only be identified after the discovery process but they suggest that they may include Drummond's outside counsel in the Alabama litigation.  *Id.*

Defendant Adkins has not yet been served, even though the complaint was filed on May 1, 2019 and service was due on August 1, 2019.  In their opposition to the motion to dismiss, plaintiffs request additional time to serve Adkins by alternative means.  Pls.' Opp. to Individ. Defs.' Mot. at 4.

The Court must extend time for service if plaintiff "shows good cause for the failure." Fed. R. Civ. P. 4(m).  Plaintiffs contend that they made three attempts to serve Adkins at his last known address in West Virginia, but that "no person answered the door."  Pls.' Opp. to Individ. Defs.'

---

10      He allegedly "had full knowledge of the terrorist activities of Colombia paramilitary groups at the time he was hired" and he "approve the payments to the AUC."  Compl. ¶ 19.  Plaintiffs allege that he was a "key participant in the Drummond [d]efendants' ongoing efforts to cover up their criminal activities and to seek to damage [p]laintiffs in retaliation for [p]laintiffs' efforts to expose Drummond's criminal acts."  *Id.*

Mot. at 15.  The complaint and summons were eventually returned to Maryland in early July of

2019.  Decl. of Terrence P. Collingsworth [Dkt. # 13-1] ¶ 10; *see* Adkins UPS Proof of Service,

Ex. H to Pls.' Opp. to Drummond Defs.' Mot. [Dkt. # 13-9].  Plaintiffs request additional time to

serve Adkins, and they request they be permitted to serve Adkins by first class mail at his last

known address since he may have "some system of holding and collecting mail at that address."

Pls.' Opp. to Individ. Defs.' Mot. at 16.  They also propose allowing them to hand-deliver a copy

of the summons and complaint to the attorney who has represented Adkins in other litigation

through the years, with a request to forward the complaint to Adkins if the attorney has another

address on file for him.  *Id.*  Finally, they propose sending a copy of the summons and complaint

to an attorney who is representing a number of defendants, including Adkins, in a lawsuit brought

by Colombian officials.  *Id.* at 17.

   While the Court is generally willing to afford claimants the time they need to serve

defendants, the plaintiffs do not indicate that they have made any efforts to ascertain his current

whereabouts in the ensuing year.  Nor have they asked this Court for leave to attempt these forms

of alternative service in all of that time. Under those circumstances, and given the lack of any

factual allegations in the complaint or the opposition to the motions to dismiss that would tie this

defendant to the District of Columbia even if he could be served, the Court will dismiss Adkins

without prejudice for want of prosecution and failure to serve.  *See* Fed. R. Civ. P. 41(b).

   As for the ten unnamed defendants, it is true that a "[p]laintiff may bring an action against

unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown

defendants after the completion of discovery."  *Simmons v. District of Columbia.*, 750 F. Supp. 2d

43, 45 (D.D.C. 2011); *see Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010) ("As a general

matter, a court will not entertain a suit unless the defendant has been made a party by service of

process.   Courts do grant an exception to this rule for 'John Doe' defendants, but only in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery.").   Even for unnamed defendants, service must be completed within ninety days of the filing of the complaint.   *See Simmons*, 750 F. Supp. at 45, citing Fed. R. Civ. P. 4(m); *Kurtz v. United States*, 798 F. Supp. 2d 285, 292–93 (D.D.C. 2011).

It does not appear from the record that any attempt has been made to identify these defendants or serve them since the complaint was filed on May 1, 2019.   Plaintiffs have not moved for expedited discovery or to serve discovery prior to a Rule 26(f) conference.   Nor have plaintiffs moved for additional time to serve the unnamed defendants or argued that good cause exists to extend the service deadline.   *See Landwehr v. FDIC*, 282 F.R.D. 1, 5 (D.D.C. 2010) (finding that good cause did not exist to extend the service deadline where plaintiffs argued that they did not have the opportunity to identify the Doe defendants).   Even if plaintiffs had sought discovery of the identities of the unknown defendants, to obtain such discovery, plaintiffs "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendants."   *Malibu Media, LLC v. Doe*, Civ. Action No. 15-986 (RDM), 2015 WL 5173890, at *1 (D.D.C. Sept. 2, 2015), quoting *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).   The complaint contains no allegations suggesting that the Court would have personal jurisdiction over the unnamed defendants.

In addition, the allegations in the complaint against Doe defendants must be specific enough "to permit the identity of the party to be ascertained after reasonable discovery."   *Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013), quoting *Landwehr*, 282 F.R.D. at 5 (internal quotation marks omitted).   Courts have routinely dismissed unnamed defendants where the complaint fails to allege specific allegations of wrongdoing against them.   *Landwehr*, 282 F.R.D.

at 5 (dismissing claims against various unnamed defendants, noting "the complete absence of any specific allegations" against them); *Kurtz*, 798 F. Supp. 2d at 293 (dismissing the unnamed defendants from the action where the complaint stated that the unnamed defendants "aided in fabricating" certain misrepresentations and "carr[ied] out wrongs" because the  allegations were not sufficiently specific) (internal quotation marks omitted) (edits in original).

Here, the only allegation in the complaint about the Doe defendants states that they are "persons currently unknown who assisted the Drummond Defendants in their bribery and threats to potential witnesses."  Compl. ¶ 22.  Thus, plaintiffs' complaint "lacks sufficiently specific allegations of wrongdoing as to the unnamed defendants to allow [them] to proceed against them." *Kurtz*, 798 F. Supp. 2d at 293.

For all these reasons, the Court will dismiss the ten unnamed defendants without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted.  The Court also dismisses without prejudice defendant Adkins and the unnamed defendants.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 29, 2020